**Alex MUSIC, Plaintiff,**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**No. 613.**

United States District Court
E. D. Kentucky.
Pikeville Division.

July 13, 1961.

Dan Jack Combs, Pikeville, Ky., for plaintiff.

Jean L. Auxier, U. S. Atty., Eastern District of Kentucky, Lexington, Ky., for defendant.

SWINFORD, District Judge.

This action was brought under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to establish the plaintiff's right to a period of disability and to disability insurance benefits under Sections 216(i) and 223 of the Act, 42 U.S. C.A. §§ 416(i) and 423.

The hearing examiner found against the claimant, and his request for review was denied by the Appeals Council after medical evidence in addition to that on which the hearing examiner's decision was based was made a part of the record.

Both parties have moved for summary judgment. The scope of the court's review is limited to a determination of whether (1) the conclusions of the hearing examiner are supported by his findings and whether (2) the findings are supported by substantial evidence on the record considered as a whole.

The plaintiff claims that he was disabled within the meaning of Section 216 (i) of the Act, 42 U.S.C.A. § 416(i), during the period beginning at some time on or prior to June 30, 1956, to and including the filing of his application with the Social Security Administration on September 5, 1957, and that he is totally and permanently disabled within the meaning of the Act.

The burden of proving his disability is on the claimant. The term "disability," as defined by the statute, means (1) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which (2) can be expected to result in death or be of long continued and indefinite duration.

The claimant must also establish that his disability had its inception before the expiration of his specially insured status. Roberts v. Flemming, D.C., 186 F.Supp. 426, 427; Newsom v. Flemming, D.C., 186 F.Supp. 771. The plaintiff's specially insured status, as defined in Section 216(i), expired on June 30, 1956.

The hearing examiner, impliedly if not expressly, found that the claimant's disability satisfied the second requirement of the statutory definition, and his finding is supported by all the medical evidence of record. The examiner also found that the claimant had not shown

his disability to be "so severe as to prevent all types of substantial gainful activity. * * *" Upon this review, the court must determine whether that finding is supported by substantial evidence.

The record discloses that the plaintiff has had only three years of schooling. The examiner found that he cannot read, and apparently can only write his name. He is now 64 years of age. He had worked most of his life as a coal miner but was required to surrender his job in the mines in 1952 because of his arthritic back condition. At least the last 11 years of his work in the mines consisted of loading coal into cars with a hand shovel. Between May 1953 and February 1955 the plaintiff worked intermittently, two to three hours per day, as a janitor for a poultry processing plant in Warsaw, Indiana. Earl Hackworth, his son-in-law, with whom the plaintiff was then living, was superintendent of the plant and gave him the job. Hackworth testified that he gave the plaintiff the job out of sympathy and to relieve himself of "a little pressure also." He further testified that the job was very easy, that the plaintiff often missed work because of his back pain, and that he finally had to "let him go." This was in February 1955, and the plaintiff has not worked since that time.

The medical evidence consists of six exhibits, all of which were based upon physical examinations of the plaintiff. The most detailed of the reports is that of September 28, 1959, by Dr. Arthur S. Jones, an orthopaedic surgeon and Medical Director of the Huntington (West Virginia) Orthopedic Hospital, Inc. Dr. Jones made a thorough examination of the plaintiff which included X-ray and laboratory studies. He summarized, in part, that: "Patient is a man 62 years of age with apparent age of 75. * * * Patient has an osteoarthritis of the spine and arthritis of the knees and hands of the hypertrophic type. Condition is gradually and slowly becoming worse, and he is now totally disabled from any type of work in his present condition."

Other medical evidence includes two reports by Dr. J. Russell Cook of Huntington, West Virginia, who first examined the plaintiff in 1953. His next examination was on October 30, 1957, and in his report of that date Dr. Cook, without benefit of X-ray studies, characterized the plaintiff's condition as "osteoarthritis, spine, hips, fingers", and indicated that the condition was slowly progressive. He advised the plaintiff not to work. In 1953 Dr. Cook had advised the plaintiff to use a board under his mattress to relieve his pain; he repeated this advice in 1957.

Dr. Cook examined the plaintiff again on June 9, 1958, and his report varies little from that of 1957, except that he indicated that the plaintiff "should do what he can" in the way of work.

On October 5, 1959, Dr. A. J. Davidson of Prestonsburg, Kentucky, examined the plaintiff and reported that he suffered from hypertension and arthritis, that he was unable to work, and that his condition was not likely to improve.

The second examination in which X-rays were made was by Dr. A. B. Carter of the Paintsville (Kentucky) Clinic on March 27, 1960. His report of March 29, 1960, reads in part: "Physical examination shows this man to walk in a stooped and painful way. Motion of the cervical spine is painful and markedly limited in all directions. Motion of the lumbar spine is limited and there is listing to the left. The lumbar area is flattened. The knee joints are enlarged and motion is painful and limited. X-ray examination made 3–27–60 shows extensive and severe osteoarthritic involvement of the entire cervical spine with spur formation. I consider this man to be totally disabled due to extensive osteoarthritis of the cervical and lumbar spine and of both knees. There is no hope for improvement and I feel that his condition will become worse and more painful as time goes on."

On the basis of the medical evidence and the testimony at the hearing, the examiner found in part:

"There is no doubt from these medical reports that the claimant

does have an arthritic condition in his back, legs, and fingers which is painful and causes some loss of motion. This condition apparently had its beginning long before the claimant stopped working. It became so painful in 1952 that he had to stop his usual work of mining and take a lighter job. In 1955, he said, he stopped this job because he could no longer tolerate the pain."

The examiner went on to point out what he considered to be certain inconsistencies in the medical evidence. In particular, he considered Dr. Jones' finding of a moderate degree of osteoarthritis inconsistent with his opinion of total disability. The hearing examiner also found that the "degree of pain elicited is out of proportion with the physical and anatomical findings." In view of these findings by the examiner, it seems appropriate to inquire into their soundness.

■ It is elementary that the existence, and to a large extent the severity, of pain can be clinically determined by physical examination. A close examination of the medical reports of record discloses that the findings regarding pain are shown, not only as a part of the history and subjective symptoms, but, also, as a part of the objective findings on physical examination. Although the court does not presume to pass on the medical soundness of the findings of the hearing examiner, it nevertheless feels that in the absence of *any* evidence to the contrary, the examiner should not have presumed to find inconsistencies in medical evidence where none exist. Accordingly, I must consider that the findings as to such inconsistencies are entitled to no weight on this review.

In the face of all the medical evidence of record, the hearing examiner, during the course of the hearing and in his written decision, stated that "medical opinions as to whether an individual is totally and permanently disabled are without weight", relying upon certain language in United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617.

■ While it is true that it is not within the province of the doctors to attempt to resolve the ultimate issue of disability, it does not follow that their opinions on that point are to be ignored. To the contrary, as was well said in Teeter v. Flemming, 7 Cir., 270 F.2d 871, 874: "The expert opinion * * * as to disability and inability to engage in any substantial, gainful employment, was admissible evidence for consideration by the referee and not, in itself, binding on him. But as it was not controverted by substantial evidence to the contrary, the referee's adverse decision on the ultimate fact was properly set aside." To the same effect, see also Pruitt v. Flemming, D.C., 182 F.Supp. 159, 162; Hill v. Fleming, D.C., 169 F.Supp. 240, 245, and cases there cited.

With the single qualification that the plaintiff "should do what he can", the opinions of all the doctors who examined the plaintiff were, unqualifiedly, to the effect that he was totally and permanently disabled. Furthermore, these opinions were merely corroborative of their clinical findings. Cf. Dean v. Flemming, D.C., 180 F.Supp. 553, 556.

■ The defendant states in brief that there is no medical evidence of record to support the plaintiff's contention that his disability had its inception on or before June 30, 1956, when his specially insured status expired. It is sufficient to point out that the hearing examiner specifically found that the applicant's disability had its beginning before 1952 and that, even if it be assumed the defendant can now be heard to complain of the finding of the hearing examiner whose decision he here defends, by the terms of the statute that finding must stand if it is supported by substantial evidence. 42 U.S.C.A. § 405(g). Dr. Cook's first report in October 1957 indicates that the plaintiff first consulted him in February 1953, that his condition on the 1957 examination appeared to be "slowly progressive", and that he prescribed a hard bed and aspirin. The plaintiff testified that he slept with a board under his thin cotton mattress and

that "Dr. Cook put me on that board" on February 4, 1953. These facts alone are enough to convince the court that the examiner's finding on this point cannot be said to be unsupported by substantial evidence.

Upon the record, considered as a whole, I am convinced that the plaintiff met his burden of proving his inability to engage in any substantial gainful activity as the result of a disability which had its inception on or before June 30, 1956. The plaintiff having met his burden of proof, that burden then shifted to the defendant to show by competent *evidence* that the plaintiff was not so disabled as to be incapable of engaging in any substantial gainful activity. Corn v. Flemming, D.C., 184 F.Supp. 490, 494; Dean v. Flemming, supra; Parfenuk v. Flemming, D.C., 182 F.Supp. 532, 536; Ellerman v. Flemming, D.C., 188 F.Supp. 521, 527.

The hearing examiner found that "although the claimant negates the idea of doing the easiest of jobs, there are many types of jobs where the use of the hands and intellect are required, rather than strenuous physical effort. Employment of this nature appears to be within the claimant's physical and mental capabilities." Apparently on the basis of this supposition, the plaintiff's claim was denied. This conclusion is not evidence, and it has no substantial evidence of record to support it. To the contrary, the record shows and the examiner found that the plaintiff is illiterate except that he can write his name, and that his fingers are arthritic, the joints swollen, and their movement limited. For these reasons, I find it impossible to reconcile the examiner's conclusions with his findings.

Accordingly, I must conclude that the determination of the hearing examiner is not supported by any substantial evidence and that the decision of the defendant must, therefore, be reversed. So holding, it must next be determined whether the cause should be remanded for rehearing. 42 U.S.C.A. § 405(g).

It is sometimes appropriate to remand a cause for the taking of further evidence. See, e. g., Hall v. United States, 6 Cir., 289 F.2d 290; Kerner v. Flemming, 2 Cir., 283 F.2d 916. In the instant case, however, it seems clear that any further medical evidence would be merely cumulative, and the decision herein negatives any need for the taking of such other evidence as was contemplated in the Hall and Kerner cases, supra.

Accordingly, for the reasons and on the basis of the authorities hereinabove set out, the defendant's motion for summary judgment should be overruled. The plaintiff's motion for summary judgment in his favor should be granted, and the cause should be remanded to the Secretary, Department of Health, Education and Welfare with directions that the plaintiff be granted a period of disability from February 28, 1955, and such disability insurance benefits as he would have been entitled to had his initial application been approved.

An order in conformity with this memorandum is this day entered.